UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNAMARIE RENTERIA-HINJOSA, an individual, on behalf of herself and on behalf of all persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SUNSWEET GROWERS, INC.,<br><br>Defendant. | No. 2:23-cv-01413-DJC-DB<br><br><br><br>ORDER |

Before the Court are a Motion to Remand this action back to California Superior Court (ECF No. 8) and a Motion to Dismiss (ECF No. 6). Plaintiff originally filed this matter in the Superior Court of the State of California, County of Sutter. Defendant removed the action to federal court on the basis that section 301 of the Federal Labor Relations Management Act ("LRMA") preempts Plaintiff's otherwise state law-based causes of actions, thereby creating federal jurisdiction, because Plaintiff's employment was subject to collective bargaining agreements. Plaintiff brings the present Motion to Remand arguing that this action should be remanded to the Superior Court because the rights asserted do not arise under or rely on the interpretation of the collective bargaining agreement and are therefore not preempted by the LRMA. Relatedly, Defendant brings a Motion to Dismiss arguing that Plaintiff's claims which

1

are preempted under the LRMA must be dismissed. For the reasons below, the Court GRANTS IN PART Defendant's Motion to Dismiss, and GRANTS Plaintiff's Motion to Remand.

## I.    Background

Plaintiff Annamarie Renteria-Hinjosa brought the present action on behalf of herself and other similarly situated employees against her former employer, Defendant Sunsweet Growers, Inc., alleging multiple California Labor Code violations. (Not. of Removal (ECF No. 1); Compl. (ECF No. 1-1, Ex. A).) The action was originally filed on April 21, 2023 in the Superior Court of the State of California in and for the County of Sutter, but was removed to this Court on July 14, 2023. (Not. of Removal at 1.)

Plaintiff was employed by Defendant from February 2018 to May 2023. (*Id.*) During her employment, she was part of a union, and her employment was subject to two collective bargaining agreements between the Union and the Defendant. (*Id.* ¶ 12.) The first agreement was effective from January 1, 2017 through December 31, 2019, but was extended until February 28, 2021. (Declaration of Christina Dake (ECF No. 1-3).) A second agreement was entered into during Plaintiff's employment, effective March 1, 2021 through December 31, 2023. (*Id.*) Both collective bargaining agreements contain terms related to hours of work – including overtime and meal and rest breaks – wage rates and overtime premiums, other benefits, and job assignment. (ECF Nos. 1-4, Ex. B and 1-5, Ex. C.)[1]

While there were collective bargaining agreements between the Parties at the time of the events which gave rise to the claims, Plaintiff has not brought claims alleging a violation of these agreements, but rather alleges that Defendant engaged in multiple violations of the California Labor Code, including failure to pay minimum wages, failure to pay overtime compensation, failure to provide meal and rest breaks,

---

[1] The relevant terms of both bargaining agreements discussed herein are identical.

failure to provide itemized pay statements, failure to reimburse employees for expenses, and failure to pay sick wages, as well as retaliation in violation of the Labor Code, and unlawful business practices in violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*. (Compl. at 1.)

Plaintiff now moves the Court to remand this action back to the California Superior Court for lack of subject matter jurisdiction (Mot. to Remand ("Mot.") (ECF No. 8-1)), and Defendant has opposed the motion (Opp'n (ECF No. 13)). Defendant has also moved to dismiss Plaintiff's claims, (Mot. to Dismiss ("MTD") (ECF No. 6)), which Plaintiff has opposed, (Opp'n to MTD (ECF No. 7)).

The Court heard oral argument on this matter on September 14, 2023 with Aparajit Bhowmik appearing on behalf of Plaintiff and Michael A. Wertheim appearing on behalf of Defendant. Following oral argument, the Court took this matter under submission.

**II.   Legal Standard**

A defendant may remove a state court civil action to federal court so long as that case could originally have been filed in federal court, based on either diversity jurisdiction or federal question jurisdiction. 28 U.S.C. § 1441(a); *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 163 (1997). Federal question jurisdiction is met where the action "aris[es] under the Constitution, laws, or treaties of the United States." *See* 28 U.S.C. § 1331. "[T]he presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998).

Removal jurisdiction is to be rejected in favor of remand to the state court if there are doubts as to the right of removal. *Geographic Expeditions, Inc. v. Estate of Lhotka*, 599 F.3d 1102, 1107 (9th Cir. 2010). The defendant seeking removal of an action from state court bears the burden of establishing grounds for federal jurisdiction by a preponderance of the evidence, *see Geographic Expeditions*, 599

F.3d at 1106–07; *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009); *Gaus v. Miles, Inc.*, 980 F.2d 564, 566–67 (9th Cir. 1992), but the district court must remand the case "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c); *see also Smith v. Mylan, Inc.*, 761 F.3d 1042, 1044 (9th Cir. 2014); *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) (holding that remand for lack of subject matter jurisdiction "is mandatory, not discretionary").

### III. Discussion

#### A. Jurisdiction Under the LRMA

Section 301 of the LRMA is a "mandate . . . to fashion a body of federal common law to be used to address disputes arising out of labor contracts" requiring federal courts to exercise jurisdiction over federal labor law claims. *Chalmers Corp. v. Lueck*, 471 U.S. 202, 209 (1985). Where a collective bargaining agreement governs the claim against an employer, section 301 of the LRMA preempts the claim and converts it to a federal question over which the federal court has jurisdiction. *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007). In effect, section 301 "displace[s] entirely any state cause of action for violation of contracts between an employer and a labor organization," *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 23 (1983), such that "any claim purportedly based on [a] . . . state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987). Even where a plaintiff has not alleged a breach of the labor contract by an employer, a claim will be preempted where the right asserted "exists solely as a result of the [collective bargaining agreement]," or, if arising independently of the labor agreement, is "substantially dependent on analysis of a collective-bargaining agreement." *Burnside*, 491 F.3d at 1059.

Because all of Plaintiff's claims allege violations of the California Labor Code and not a breach of the labor contract, the question before the Court is whether any of the rights asserted by Plaintiff meet the *Burnside* test. In determining whether the

claims are preempted, the Court may look beyond the pleadings, and in this instance, will refer to the documents included in the Defendant's notice of removal, including the relevant collective bargaining agreements. *See Lippitt v. Raymond James Fin. Servs., Inc.*, 340 F.3d 1033, 1041 (9th Cir. 2003), *as amended* (Sept. 22, 2003). Plaintiff separately requests that the Court take judicial notice of current and historical California minimum wages, and the Court will grant this request. (*See* ECF No. 8-3.)

### i. Rights Arising Solely Under the Collective Bargaining Agreements

#### 1. Overtime, meal, and rest period rights

Defendant argues that Plaintiff's rights to overtime wages, meal breaks, and rest periods arise solely under the labor agreements because California Labor Code sections 510 and 511, which provide for those rights, do not apply where the collective bargaining agreement meets the requirements of California Labor Code section 514.

Section 514 provides:

> [s]ections 510 and 511 do not apply to an employee covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of employees, and if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage.

Cal. Lab. Code § 514. Defendant argues that the bargaining agreements meet these criteria, and therefore Plaintiff's right to overtime is not derived from California law, but from the labor agreements.

While the parties do not dispute that the labor agreements provide for the wages, hours of work, and working conditions of employees, and provides premium wage rates for all overtime hours worked, they dispute whether the agreements provide for a wage at or above 130% of the state minimum wage. Defendant asserts that is it enough that the average wage earned by employees is above 130% of the minimum wage (Opp'n. at 5), while Plaintiff counters that the agreements list wage

5

rates below 130% of the minimum wage and therefore do not "expressly provide" for wages at or above 130% of the minimum (Mot. at 14–15).

The Court agrees with the weight of authority in the Ninth Circuit interpreting section 514 to mean that the agreements "must satisfy Section 514's requirements with respect to all covered employees in order to render Section 510 inapplicable to any particular employee." *Huffman v. Pac. Gateway Concessions LLC*, No. 19-CV-01791-PJH, 2019 WL 2563133, at *6 (N.D. Cal. June 21, 2019) (holding that "those employees" refers to all employees covered by the agreement); *see also Rooney v. Save Mart Supermarkets*, No. 2:20-CV-00671-JAM-FEB, 2020 WL 3819481, at *3 (E.D. Cal. July 8, 2020); *Sarmiento v. Sealy, Inc.*, No. 18-CV-01990-JST, 2019 WL 3059932, at *7 (N.D. Cal. July 12, 2019); *Gunther v. N. Coast Coop., Inc.*, No. 20-CV-02325-RMI, 2020 WL 3394547, at *5 (N.D. Cal. June 19, 2020); *cf. Div. of Lab. Standards Enf't v. Save Mart Supermarkets*, No. 2:21-CV-07402-ODW, 2022 WL 837206, at *6 (C.D. Cal. Mar. 21, 2022) (relying on the *Huffman* court's interpretation of 514 to interpret an analogous code section).[2]  In other words, the 514 exemption is applied to the agreement as whole, not to individual employees.  Defendant has conceded that "there are some wage rates that do not meet [the 130%] threshold" but maintains that "all employees are eligible to earn above that threshold." (Opp'n. at 5–6.)  An employee's potential eligibility to earn a wage is not sufficient; the agreement must expressly provide all employees an hourly rate at or above the threshold.  *See Huffman*, 2019 WL 2563133 at *6.  As the agreements include multiple wage rates below the threshold, they are ineligible for the exemption under section 514.

Defendant further argues that Plaintiff earned above the threshold, and so the exemption applies to her claims.  Not only is this argument precluded by the holding

---

[2] As the court in *Rooney* demonstrated, *Curtis v. Irwin Industries, Inc.*, 913 F.3d 1146 (9th Cir. 2019), relied on by Defendant, resolved a different issue.  *Rooney*, 2020 WL 3819481 at *3.  In *Curtis*, the parties did not dispute whether the agreement met the wage threshold, but rather disputed whether the agreement was compliant with section 514 because it included a different definition of overtime than section 510.  *Curtis*, 913 F.3d at 1154.  *Curtis* is inapposite.

6

above, but Defendant's assertion is also belied by the record. In its Notice of Removal, Defendant states that Plaintiff earned $18.51 per hour since February 2018, until her separation from employment with the Defendant in May 2023. (*See* Not. of Removal ¶¶ 12, 1.) While Plaintiff's regular hourly rate of pay was at least 130% of the minimum wage for a period, beginning in 2022, the minimum wage was raised to $15 per hour, at which point Plaintiff would have needed to earn at least $19.50 per hour to meet the 130% threshold. Plaintiff also earned below the threshold in 2023, when the minimum wage was raised to $15.50 per hour, and the threshold wage would have been $19.70.

Because the agreements were not exempt from California Labor Code sections 510 and 511 under section 514, Plaintiff's rights to overtime pay, meal breaks, and rest periods arose under California law and not under the bargaining agreements.

### 2. Timeliness of wage payments

Defendant next argues that Plaintiff's right to timely wage payments based on California Labor Code section 204 arises solely under the collective bargaining agreements because section 204 provides an exemption for wage payments made pursuant to a collective bargaining agreement. While the timely wage claim is a derivative of Plaintiff's main claim that Defendant failed to pay for sick time, Plaintiff claims that the sick time payments were untimely under section 204, which requires semi-monthly payment of wages. Cal. Lab. Code § 204(a). "However, when employees are covered by a collective bargaining agreement that provides different pay arrangements, those arrangements shall apply to the covered employees." Cal. Lab. Code § 204(c). Thus, the bargaining agreements govern, not section 204, if they provide for different pay arrangements.

Indeed, both labor agreements provide for different pay arrangements, namely, weekly as opposed to semi-monthly payments. (*See* ECF No. 1-4, Ex. B at 8; ECF No. 1-5, Ex. C at 8.) Therefore, those pay arrangements displace section 204, and Plaintiff's right to timely payment of wages exists solely as a result of the bargaining

7

agreements. *Ariola v. Raytheon CA Techs. Corp.*, No. 23-CV-4664-MWF-AGR, 2023 WL 5764296, at *7 (C.D. Cal. Sept. 6, 2023) (collecting cases holding that if a pay arrangement under the bargaining agreement differs from 204(a), then the bargaining agreement governs timing of wage payments, pursuant to 204(c)).

In her Reply, Plaintiff fails to address Defendant's argument regarding 204, but at oral argument asserted that because the collective bargaining agreements had the same requirements as 204(d), requiring payment within 7 days of the end of a pay period, they did not displace 204(d). Numerous courts have rejected this same argument. *Ariola* 2023 WL 5764296 at *7; *Corlew v. Superior Duct Fabrication, Inc.*, No. 22-CV-04466-JLS-E, 2022 WL 17834201, at *7 (C.D. Cal. Dec. 21, 2022); *Johnson v. San Francisco Health Care & Rehab Inc.*, No. 22-CV-1982-JSC, 2022 WL 2789809, at *9 (N.D. Cal. July 15, 2022); *Rodriguez v. USF Reddaway Inc.*, No. 2:22-CV-00210-TLN-DB, 2022 WL 18012518, at *5 n.5 (E.D. Cal. Dec. 20, 2022). The Court agrees with and adopts the reasoning of these cases, which determined that section 204(d) does not create a distinct right but is a "satisfaction provision." Where a different pay arrangement is agreed to under 204(c), the requirements of section 204 are satisfied if that different pay arrangement comports with 204(d). *See Johnson v. San Francisco Health Care & Rehab Inc.*, 2022 WL 2789809, at *9.[3] The failure to pay wages within the time period agreed to is a violation of the bargaining agreements, not of section 204.

Accordingly, Plaintiff's right to timely wages is a based in the bargaining agreements, and Plaintiff's state law claim is preempted as a challenge to those contracts. Based on this claim, the Court has subject matter jurisdiction over the claim.

---

[3] The Court is aware of only one case in this circuit that has found that section 204(d) creates a distinct right, *Halimo Mkoma, v. Ace Parking Management*, No. 21-CV-1693-MMA (MSB), 2022 WL 104282, at *9 (S.D. Cal. Jan. 11, 2022). However, as the court in *Corlew* noted, *Mkoma* does not engage in the same rigorous statutory interpretation as *Johnson* and its analysis is not persuasive. *See Corlew*, 2022 WL 17834201, at *8.

8

### 3. Resolution of disputes

Defendant further argues that Plaintiff's right to a remedy, and therefore all of Plaintiff's rights, arise out of the labor agreements because there is a provision in the agreements which require all disputes under the California Labor Code to be resolved by the agreements' Dispute Resolution Procedure up to and including arbitration.

"The existence of an arbitration clause in a [collective bargaining agreement] does not necessarily implicate § 301 preemption." *Meyer v. Irwin Indus., Inc.*, 723 F. Supp. 2d 1237, 1246 (C.D. Cal. 2010). In order for a grievance procedure to preempt claims under the LMRA, the agreement must "clearly and unmistakably" waive Plaintiff's rights in order to displace those rights. *Munoz v. Atl. Express of L.A., Inc.*, No. 12-CV-6074-GHK-FMOX, 2012 WL 5349408, at *4 (C.D. Cal. Oct. 30, 2012); *cf. Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 81 (1998) (distinguishing individual waiver of rights with a union's waiver of the rights of represented employees in holding that a waiver in a collective bargaining agreement must be explicit).

Where there is no clear waiver of rights, but the Defendant asserts that the court must interpret the agreement to determine whether the grievance procedure and/or arbitration provision should nonetheless apply, the claims are not preempted under section 301 because a defense cannot serve as the basis for federal jurisdiction. *See Dall v. Albertson's*, Inc., 234 F. App'x 446, 449 (9th Cir. 2007); *Angeles v. Kik Int'l LLC*, No. 2:22-CV-07342-SB-AFM, 2022 WL 17547781, at *4 (C.D. Cal. Dec. 9, 2022). While "[i]t is true that when a defense to a state claim is based on the terms of a collective-bargaining agreement, the state court will have to interpret that agreement to decide whether the state claim survives . . . a defendant cannot, merely by injecting a federal question into an action . . . transform the action into one arising under federal law . . . ." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 398–99 (1987).

The distinction is that where the arbitration provision is clear and unmistakable, arbitration becomes the sole method by which a plaintiff may pursue her legal remedies, and the plaintiff's rights to a remedy necessarily arise out of the collective

bargaining agreement.  On the other hand, where the defendant looks to a vague or unclear bargaining agreement in mounting their defense, it is the defendant inserting a federal question.  *See Meyer*, 723 F. Supp. 2d at 1247 (where it was not clear that Plaintiff's claims were subject to binding arbitration there was no section 301 preemption); *Dall*, 234 F. App'x at 449 (rejecting employer's argument that claims were preempted because they were "substantially dependent on interpreting the Settlement Agreement to determine if the release provisions apply to [employees'] individual claims" because the agreement was "only relevant to Appellees' asserted defenses of waiver, release, and duty to arbitrate.")[4]

To the extent that Defendant is arguing that the grievance and arbitration procedures completely displace Plaintiff's rights, the arbitration language is not clear and unmistakable.  Here, while the grievance procedure does state that it is "the sole and exclusive remedy" for claims, including claims under the California Labor Code, the procedure is broken into various steps, only some of which clearly apply to the employee.  (ECF No. 1-4, Ex. B at 27; ECF No. 1-5 at 27.)  Steps one through three apply to "the grievant" which is earlier defined as "the employee and/or the Union Representative." (*Id.* at 27–29.)  Notably, though, the arbitration provision appears to only apply to the Union, not to individual employees, as it states that "[i]f the Union is not satisfied with the decision rendered at Step 3, it may appeal the decision in writing to an arbitrator . . . ."  (*Id.* at 29.)  As such, it is not clear and unmistakable that Plaintiff has waived her right to pursue claims in a judicial forum, and so her claims do not arise solely from the bargaining agreements.  While Defendant may raise a defense that Plaintiff failed to comply with the grievance procedure or argue that the agreements should be interpreted to apply to Plaintiff, the dispute procedure does not displace Plaintiff's right to seek judicial review for the purpose of preemption

---

[4] While *Dall* concerned a settlement agreement and not a collective bargaining agreement, the LMRA applies to "[s]uits for violation of contracts between an employer and a labor organization representing employees," 29 U.S.C. § 185(a), and as such they are treated the same for preemption purposes.  *Dall*, 234 F. App'x at 448.

10

under the LMRA.  *See Kik Int'l*, 2022 WL 17547781, at *4 (an employer's claim that a plaintiff failed to exhaust the grievance procedure and that an arbitration agreement may apply to the plaintiff "does not serve as a basis for complete preemption").

Accordingly, because the Plaintiff has not clearly and unmistakably waived her right to judicial review, the grievance procedure does not displace Plaintiff's state law rights.  Moreover, the potential defenses under the procedure cannot cause Plaintiff's claims to be preempted.

### ii.  Rights Dependent on Analysis of the CBA

In addition to arguing that Plaintiff's claims arise under the collective bargaining agreements, Defendant also argues that many of Plaintiff's claims substantially rely on interpretation of the agreements.  For claims to be preempted under the second *Burnside* prong, a Court must be required to do more than "look to" the terms of the bargaining agreement.  *Burnside*, 491 F.3d at 1060.  "When the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be [preempt]ed." *Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994). "[I]nterpretation implies discordance over the meaning of a term that requires authoritative explication."  *Cuellar-Ramirez v. US Foods, Inc.*, No. 16-CV-00085-RS, 2016 WL 1238603, at *5 (N.D. Cal. Mar. 22, 2016).  "A creative linkage between the subject matter of the claim and the wording of a [bargaining agreement] provision is insufficient."  *Cramer v. Consol. Freightways Inc.*, 255 F.3d 683, 692 (9th Cir. 2001), *as amended* (Aug. 27, 2001).

Defendant lists a host of apparently undefined terms that relate to the calculation of an employee's wages and overtime, including "pyramiding," "the premium," and "regular rate of compensation," and argue that these terms must be interpreted by the Court to determine Plaintiff's overtime pay or Defendant's liability for missed meal or rest breaks.  However, Defendant fails to identify any dispute over the meaning of these terms, how interpretation is necessary to adjudicating Plaintiff's

claims, or how a particular interpretation would affect the outcome of Plaintiff's claims.

Defendant argues these terms would need to be interpreted to calculate Plaintiff's overtime, but there is no dispute over how overtime is calculated. Rather, as in *Bruccheri v. Aramark Unif. Servs., LLC*, Plaintiff alleges that Defendant forced her to work through her meal breaks while she was clocked out, which led to not receiving overtime she was otherwise entitled to. No. 18-CV-00119-KJM-KJN, 2018 WL 5617197, at *3 (E.D. Cal. Oct. 30, 2018). Thus, "Plaintiffs' unpaid wage claims are not based on a dispute over how to calculate their pay rate under the [bargaining agreement], but on [d]efendant's alleged failure to pay them any regular or overtime pay *at all* for certain time worked." *Id.* (quoting *Bryant v. Catholic Healthcare W.*, No. 11-CV-07490 DDP (JCGx), 2012 WL 3425649, at *3 (C.D. Cal. Aug. 13, 2012) (emphasis in original)).

In *Segismundo v. Rancho Murieta Country Club*, the court found that because the "plaintiff's complaint does not allege that defendant's 'reckoning' policy of using the hour and quarter hour markers for overtime leads to an underpayment in the amount of overtime wages due" the term would not have to be interpreted in adjudicating Plaintiff's overtime pay. *Segismundo v. Rancho Murieta Country Club*, No. 21-CV-02272-DAD-JDP, 2022 WL 9921676, at *5 (E.D. Cal. Oct. 17, 2022). Similarly, here, Plaintiff does not assert that the "no-pyramiding" rule was ever applied against her or that her overtime claims might be subject to the no-pyramiding rule. Nor does she assert that Defendant miscalculated or misapplied the premium or regular rate of pay.[5] While the Court will need to apply the terms to determine liability, "[t]he 'need to consult the [collective bargaining agreement] to determine the wage rate to be used in calculating liability cannot, alone, trigger section 301 preemption . . . .'" *Id.* (quoting *Burnside*, 491 F.3d at 1074.)

---

[5] Defendant also makes reference to the term "pilot program" being ambiguous, but not only do the agreements state that any pilot program would have separate terms and conditions in writing, there is no evidence that Plaintiff was ever subject to a pilot program. (*See* ECF 1-4, Ex. B at 6, ECF No. 1-5, Ex. C at 6.)

1    Defendant makes a similar – and unavailing – argument with respect to
2 vacation pay and sick pay, stating that the terms "enhanced hours," "regular workday,"
3 "during overtime," and "reasonable proof of illness" are terms which would need to be
4 interpreted to adjudicate Plaintiff's claims.  Defendant again fails to articulate how the
5 meaning of these terms are at issue.  With respect to the terms "comfort and
6 convenience of workers" or "economical operation of the plant" – which, under the
7 agreements, factor into *when* breaks are provided – the Court will not have to
8 interpret those terms to determine *whether* appropriate breaks were provided.
9    In sum, Defendant's argument "conflates the need to analyze the agreements'
10 provisions with the need to simply apply those provisions." *Bruccheri*, 2018 WL
11 5617197, at *4 (quoting *Moore v. Aramark Unif. Servs., LLC*, No. 17-CV-06288-JST,
12 2018 WL 701258, at *4 (N.D. Cal. Feb. 5, 2018)).  Determining whether Defendant
13 engaged in the alleged conduct will not require interpretation of the terms above.
14    As to the question of whether Defendant provided suitable seating to Plaintiff,
15 while the Court would have to determine what constitutes suitable seating under the
16 relevant Industrial Welfare Commission Wage Order and whether the work performed
17 by Plaintiff reasonably lent itself to using seats, there are no terms in the bargaining
18 agreements which would need to be interpreted to address this claim.  Defendant
19 states that the Court would have to interpret the agreements' provisions related to
20 assignment of work based on seniority, physical and mental capacity to perform job
21 functions, and "necessary skills to ensure efficient operation." (Opp'n. at 6.)  Plaintiff's
22 claims do not substantially depend on the interpretation of those provisions because
23 whether Plaintiff had the seniority, skill, or physical and mental capacity to receive a
24 job assignment or perform a job are separate questions from whether the job she
25 actually performed reasonably permitted the use of seats.
26    Finally, Defendant is correct in its assertion that the Dispute Resolution
27 Procedure would need to be interpreted in order to determine whether it is
28 applicable to Plaintiff and whether Plaintiff failed to exhaust the procedure because it

is unclear whether the arbitration provision applied to Plaintiff.  However, as discussed above, claims cannot be preempted by a Defendant inserting a defense under the agreement.  *Kik Int'l LLC*, 2022 WL 17547781, at *4 (finding that the need to interpret the agreement based on a failure to exhaust grievance procedures cannot serve as basis for preemption).

### B.  Failure to Exhaust Claims

In its Motion to Dismiss, Defendant argues that any claim which is preempted by the LRMA must necessarily be dismissed,[6] and recites the same preemption arguments it raised in its Opposition to the Motion to Remand.  (*See* MTD and Opp'n.)

Defendant misunderstands the effect of LRMA preemption.  Where a claim arises out of a collective bargaining agreement, preemption under section 301 of the LRMA effectively converts any state law claim on the issue into a federal claim based on the bargaining agreement.  That a claim is preempted under section 301 does not necessarily require that the claim be dismissed, unlike preemption under a statutory scheme which robs the federal court of jurisdiction.  *See, e.g.*, *Toro v. Napolitano*, No. 12-CV-2804-IEG (WVG), 2013 WL 4102158, at *1 (S.D. Cal. Aug. 13, 2013) (finding that the court lacked jurisdiction over a claim preempted by the Civil Service Reform Act which by statute "deprives a federal court of subject matter jurisdiction over preempted claims" because it creates an exclusive administrative remedy (quoting *Davidson v. Korman*, No. 09-CV-1695-SBA, 2010 WL 3515760, at *2 (N.D. Cal. Sept. 8, 2010)).  If a claim is preempted under the LRMA, a defendant must still prove that the claim is required to be dismissed on a separate ground.  *See, e.g.*, *Seid v. Pac. Bell, Inc.*, 635 F. Supp. 906, 909 (S.D. Cal. 1985) (dismissing claim preempted by section

---

[6] Defendant also argues that a claim preempted by the LRMA may also be dismissed for lack of jurisdiction under U.S.C. § 12(b)(1).  This assertion not only contradicts its position that LRMA preemption *creates* federal jurisdiction, but it is also not supported by any case law analyzing LRMA preemption.  The case to which Defendant cites for this proposition is *Toro v. Napolitano*, No. 12-CV-2804-IEG (WVG), 2013 WL 4102158, at *1 (S.D. Cal. Aug. 13, 2013) which determined that the court lacked jurisdiction over a claim preempted by the Civil Service Reform Act which by statute *precluded* judicial review.  *Toro* is wholly inapplicable here.

301 for failure to exhaust remedies under the bargaining agreement, not merely because it was preempted); *Vijay v. Twentieth Century Fox Film Corp.*, No. 14-CV-5404 RSWL, 2014 WL 5460585, at *3 (C.D. Cal. Oct. 27, 2014) (refusing to dismiss claims that were preempted by section 301 because determining whether an arbitration provision applied was premature on a 12(b)(6) motion).

Despite Defendant's failure to properly address the issue, the Court does find that Plaintiff's claim for untimely wages – which the Court found to be preempted by the LRMA – must be dismissed for Plaintiff's failure to allege that she engaged in the grievance procedure at all, including those parts clearly applicable to individual employees.  "[A]n employee seeking to vindicate personal rights under a collective bargaining agreement must first attempt to exhaust any mandatory or exclusive grievance procedures provided in the agreement." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 985–86 (9th Cir. 2007).[7]  The "failure to exhaust contractually mandated procedures precludes judicial relief for breach of the collective bargaining agreement . . . ." *Id.* at 986.  As such a plaintiff must allege in the complaint that they exhausted the grievance procedures.  *Id.* at 988 (collecting cases).

Because Plaintiff has not alleged that she exhausted her claims under the grievance procedure, Plaintiff's claim for failure to pay timely wages must be dismissed.  Further, at oral argument Plaintiff's counsel confirmed that she would not be able to allege that she engaged in any portion of the grievance procedure, so the Court will not grant leave to amend.  *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009), *as amended* (Feb. 10, 2009) (denial of leave to amend appropriate where amendment would be futile because the plaintiff has no additional facts to plead).

---

[7] The other claims which are not preempted do not require a showing of exhaustion because they do not arise under the CBA like the untimely wage claim does.  "[A]n employee covered by a CBA is not required to exhaust the agreement's grievance procedure for claims that are not based on the CBA but arise from statutory rights independent of that agreement."  *Lim v. Prudential Ins. Co. of Am.*, 36 F. App'x 267, 271 (9th Cir. 2002) (*quoting Albertson's Inc. v. United Food & Commercial Workers Union*, 157 F.3d 758, 760-61 (9th Cir.1998)).

### C. Supplemental Jurisdiction

Under 28 U.S.C. §1367, where a federal court has jurisdiction over any claim, it may exercise supplemental jurisdiction over all other claims which are related to the claims over which it has original jurisdiction. 28 U.S.C. § 1367(a); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966). Because the only claim over which the Court would have jurisdiction must be dismissed, the Court should not retain jurisdiction over Plaintiff's remaining state claims. *See Gibbs*, 383 U.S. at 726 ("[I]f the federal claims are dismissed before trial, . . . the state claims should be dismissed as well."); *see also* 28 U.S.C. § 1367(c)(3). The Court will therefore remand the case back to state court. *See Corlew*, 2022 WL 17834201, at *11 (remanding the case back to state court after dismissing the only claim preempted by section 301).

## IV. Conclusion

For the above reasons, IT IS HEREBY ORDERED that Defendant's Motion to Dismiss (ECF No. 6) is GRANTED IN PART as to Plaintiff's claim under California Labor Code section 204, and Plaintiff's Motion to Remand (ECF No. 8) is GRANTED.

The Clerk of Court is directed to remand the case to the Superior Court of California County of Sutter and close this case.

IT IS SO ORDERED.

Dated: **October 3, 2023**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC2 – Renteria-hinjosa23cv01413.mtremand

16