**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ANNAMARIE RENTERIA-HINOJOSA,<br><br>    *Plaintiff - Appellee*,<br><br>v.<br><br>SUNSWEET GROWERS, INC., a California Corporation,<br><br>    *Defendant - Appellant*. | Nos.  23-3379<br>         23-4335<br><br>D.C. Nos.<br>2:23-cv-01413-DJC-DB<br>2:23-cv-01673-DJC-DB<br><br><br>OPINION |

Appeal from the United States District Court
for the Eastern District of California
Daniel J. Calabretta, District Court, Presiding

Argued and Submitted October 24, 2024
San Francisco, California

Filed August 14, 2025

Before: John B. Owens, Jennifer Sung, and Gabriel P. Sanchez, Circuit Judges.

Opinion by Judge Sung

# SUMMARY[*]

## Labor Law / Removal and Remand

The panel affirmed the district court's orders remanding two removed actions to state court after concluding that Annamarie Renteria-Hinojosa's remaining state law claims against her employer, Sunsweet Growers, Inc., were not preempted by § 301 of the Labor Management Relations Act.

The panel held that it had jurisdiction to review the remand orders because, under 28 U.S.C. § 1447(c), the bar on appellate review of remand orders set forth in § 1447(d) applies only to remands based on a defect in removal procedure or lack of subject matter jurisdiction. The parties correctly agreed that the district court's remand was not based on a defect in removal procedure. The panel concluded that the remand also was not based on a lack of subject matter jurisdiction because, after dismissing federal § 301 untimely-wage claims for failure to exhaust grievance procedures under a collective bargaining agreement, the district court, in its discretion, declined supplemental jurisdiction over the remaining state law claims. The panel held that the exhaustion requirement for § 301 claims is not jurisdictional. In addition, where the district court exercised its discretion to decline supplemental jurisdiction, its remand order was not based on a lack of subject matter jurisdiction. The panel therefore had jurisdiction to review the remand orders in their entirety, including the district

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

court's conclusions that Renteria-Hinojosa's remaining state law claims were not federal § 301 claims.

The panel affirmed the district court's conclusion that the remaining claims were not preempted by § 301, which preempts a plaintiff's state law claim where the claim (1) arises entirely from a collective bargaining agreement or (2) requires interpretation of the agreement. At step one, Renteria-Hinojosa's claims did not arise exclusively from the parties' collective bargaining agreements, but rather from California statutes and regulations prohibiting unfair business practices and retaliation and requiring employers to provide minimum wages, overtime pay, paid sick days, accurate itemized wage statements, reimbursement for necessary expenditures, meal and rest periods, and adequate seating. At step two, Renteria-Hinojosa's claims for overtime pay, sick leave pay, and meal and rest breaks were not preempted because they did not require interpretation of the collective bargaining agreements. Sunsweet's argument that all of Renteria-Hinojosa's claims were preempted because of the dispute resolution provisions in the collective bargaining agreements was precluded by *Caterpillar, Inc. v. Williams*, 482 U.S. 386 (1987), which holds that a defendant cannot create removal jurisdiction under § 301 by invoking a collective bargaining agreement as a defense. The panel concluded that Renteria-Hinojosa's claims under California's Private Attorneys General Act were not preempted.

The panel held that the district court did not abuse its discretion in deciding to remand the remaining state law claims to state court, instead of exercising supplemental jurisdiction over these claims.

## COUNSEL

Glenn A. Danas (argued), Clarkson Law Firm PC, Malibu, California; Katelyn Leeviraphan, Clark Hill PLC, Los Angeles, California; Christine T. LeVu, Norman B. Blumenthal, Kyle R. Nordrehaug and Aparajit Bhowmik, Blumenthal Nordrehaug Bhowmik De Blouw LLP, La Jolla, California; for Plaintiff-Appellee.

Dominic E. Draye (argued) and Jessica D. Kemper, Greenberg Traurig LLP, Phoenix, Arizona; Timothy J. Long and Michael A. Wertheim, Greenberg Traurig LLP, Sacramento, California; for Defendant-Appellant.

## OPINION

SUNG, Circuit Judge:

Plaintiff-Appellee, Annamarie Renteria-Hinojosa, brought two actions against her employer, Sunsweet Growers, in state court. In each action, Renteria-Hinojosa alleges that Sunsweet violated California's Business and Labor Codes. Sunsweet removed both actions to federal court, arguing that Renteria-Hinojosa's state law claims are preempted by § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a). For both actions, the district court concluded that one of Renteria-Hinojosa's claims is preempted and dismissed that claim for failure to exhaust the applicable dispute resolution procedure. The district court concluded that her remaining state law claims are not preempted and remanded them to state court. Sunsweet timely appealed the remand orders. On appeal, Sunsweet contends the district court erred in concluding that the

remaining state law claims are not preempted and remanding them. Renteria-Hinojosa argues we lack jurisdiction to review the remand orders, and in the alternative, that the district court did not err. We conclude that we have jurisdiction to review the district court's remand orders, and we affirm. The district court correctly concluded that Renteria-Hinojosa's claims are not preempted by § 301, and it did not abuse its discretion in declining to exercise supplemental jurisdiction over these claims.

## I.   BACKGROUND

Sunsweet is a California corporation that grows and processes prunes. Renteria-Hinojosa worked for Sunsweet from 2018 to 2023. During that period, she was represented by the International Brotherhood of Teamsters, Teamsters Cannery Workers and Warehouse Union Local 856 (the "Union"), and her employment was governed by two successive collective bargaining agreements ("CBAs") between the Union and Sunsweet.[1] Each CBA set forth various requirements regarding overtime pay, sick leave, and meal and work breaks, among other things. Additionally, each CBA included a dispute resolution provision specifying the procedure for employee grievances.

In April 2023, Renteria-Hinojosa filed a putative class action against Sunsweet in California state court alleging violations of California's Business and Labor Codes. Specifically, she alleges that Sunsweet (1) committed unlawful business practices, (2) failed to pay minimum wages, (3) failed to pay overtime compensation, (4) failed to

---

[1] The first CBA was initially effective from January 1, 2017 to December 31, 2019, and was subsequently extended until February 28, 2021. The second CBA was effective from March 1, 2021 to December 31, 2023.

provide required meal and rest periods, (5) failed to provide accurate itemized wage statements, (6) failed to reimburse employees for required expenses, (7) failed to accurately or timely pay sick wages, (8) failed to provide adequate seating, and (9) retaliated against her for reporting harassment and discrimination.**[2]**

In June 2023, Renteria-Hinojosa filed a corresponding action against Sunsweet in state court under California's Private Attorneys General Act ("PAGA"). PAGA provides a private cause of action for employees to sue their employers, on behalf of themselves and other employees, for violations of the California Labor Code. Cal. Lab. Code §§ 2698 *et seq*. Renteria-Hinojosa's PAGA action alleges the same California Labor Code violations raised in her class action, except her PAGA action does not allege retaliation.

Sunsweet removed both actions to federal court, asserting federal question jurisdiction on the ground that Renteria-Hinojosa's claims are preempted by § 301 of the LMRA. Sunsweet further asserted that, if the district court determined that any claims are not preempted, the court should exercise supplemental jurisdiction over those claims under 28 U.S.C. § 1367. Sunsweet then moved to dismiss both actions, arguing that each state law claim should be dismissed as preempted, or, in the alternative, because the CBA required Renteria-Hinojosa to pursue her claims through arbitration. Renteria-Hinojosa opposed dismissal and moved to remand both actions to state court.

---

[2] Although the class action complaint includes factual allegations regarding Sunsweet's failure to provide adequate seating, it does not specifically state a cause of action for this violation.

The district court dismissed in part and remanded in part.[3] The court concluded that Renteria-Hinojosa's claims regarding untimely wages are preempted by § 301, but that all other claims are not preempted. The court explained that, because these untimely-wage claims are preempted, they are properly construed as federal § 301 claims arising under the CBAs. The court then dismissed those claims on the ground that Renteria-Hinojosa failed to allege that she had exhausted CBA dispute resolution procedures.[4] Finally, the court concluded that "[b]ecause the only claim over which the [c]ourt would have jurisdiction must be dismissed," it "should not retain [supplemental] jurisdiction" over the remaining, non-preempted claims. The court then remanded those claims to state court.

Sunsweet timely appealed the district court's remand orders, and the appeals were consolidated. Renteria-Hinojosa does not challenge the district court's dismissal of her untimely-wage claims on appeal. Thus, the issues before us are (1) whether Renteria-Hinojosa's remaining claims are preempted by § 301, and (2) whether the district court abused its discretion in remanding her remaining claims to state court. But before we can address these issues, we must first determine whether we have jurisdiction to review the

---

[3] Because the district court incorporated the reasoning from the class action order into the PAGA action order, we refer to the orders together.

[4] The district court concluded that Renteria-Hinojosa failed to exhaust because she had "not alleged that she exhausted her claims under the grievance procedure," and her counsel "confirmed" at oral argument before the district court "that she would not be able to allege that she engaged in any portion of the grievance procedure" if given leave to amend her complaint. Renteria-Hinojosa does not contest these determinations on appeal.

district court's remand orders, and if so, the permissible scope of our appellate review.

## II.  APPELLATE JURISDICTION OVER REMAND ORDERS

We review our appellate jurisdiction de novo. *United States ex rel. Alexander Volkhoff, LLC v. Janssen Pharmaceutica N.V.*, 945 F.3d 1237, 1241 (9th Cir. 2020). 28 U.S.C. § 1447(d) states: "An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise," with statutory exceptions not relevant here.[5] At first glance, § 1447(d) seems to bar our review of the district court's remand orders. But in *Thermtron Products, Inc. v. Hermansdorfer*, the Supreme Court held that § 1447(d)'s bar on appellate review must be construed together with § 1447(c), which sets forth procedural rules for remands based on "defect[s]" in removal or a "lack of subject matter jurisdiction." 28 U.S.C. § 1447(c); *see* 423 U.S. 336, 345 (1976), *abrogated on other grounds by Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706 (1996). Reading § 1447(c) and (d) together, the Court held that "only remand orders issued under § 1447(c) and invoking the grounds specified therein that removal was improvident and without jurisdiction are immune from

---

[5] Section 1447(d) includes exceptions for appellate review of cases removed under 28 U.S.C. §§ 1442 or 1443. Sunsweet removed under §§ 1441, 1446, and 1453(b). Section 1453 allows a court of appeals to "accept an appeal from an order of a district court granting or denying a motion to remand a class action to the State court from which it was removed if application is made to the court of appeals not more than 10 days after entry of the order." We do not consider whether this exception applies here because Sunsweet did not address this provision in its briefing, and, in any event, Sunsweet appealed both district court remand orders after this 10-day deadline.

review under § 1447(d)." *Id.* at 346. In other words, § 1447(d)'s bar on appellate review "applies only to remands based on the grounds specified in § 1447(c), that is, a defect in removal procedure or lack of subject matter jurisdiction." *Kircher v. Putnam Funds Tr.*, 547 U.S. 633, 640 (2006).

Accordingly, we must determine whether the district court's remand in this case was based on either a defect in removal procedure or lack of subject matter jurisdiction. As the parties agree, the court's remand was not based on a defect in removal procedure. The principal question for our jurisdiction, therefore, is whether the district court's remand was based upon a lack of subject matter jurisdiction.

The district court's remand orders proceeded from three determinations. The district court first concluded that, under § 301, Renteria-Hinojosa's untimely-wage claims are preempted and therefore properly construed as federal claims for violations of the CBAs.[6] The parties do not

---

[6] Section 301 confers federal subject matter jurisdiction over suits for violations of labor contracts. 29 U.S.C. § 185(a); *Textron Lycoming Reciprocating Engine Div., Avco Corp. v. United Auto., Aerospace, Agric. Implement Workers of Am.*, 523 U.S. 653, 656 (1998). The Supreme Court has recognized that the "preemptive force of § 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization." *Franchise Tax Bd. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 23 (1983) (internal quotation marks omitted). "Once preempted, 'any claim purportedly based on [a] . . . state law is considered, from its inception, a federal claim, and therefore arises under federal law.'" *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007) (quoting *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987)); *see also Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985). In other words, § 301 preemption transforms a state law claim into a federal claim for the violation of a collective bargaining agreement, within the original subject matter jurisdiction of federal courts.

challenge the district court's decision to convert Renteria-Hinojosa's untimely-wage claims into federal claims. Nor do they dispute that § 301 provides federal subject matter jurisdiction over such claims. *See Burnside*, 491 F.3d at 1059; *Caterpillar*, 482 U.S. at 393. The district court then dismissed these federal untimely-wage claims for failure to exhaust CBA grievance procedures.[7] Finally, the district court concluded that Renteria-Hinojosa's remaining state law claims are not preempted by § 301, and it remanded those claims to state court.

As explained below, the district court had discretion to decline supplemental jurisdiction over these remaining state law claims; it was not required to remand them for lack of subject matter jurisdiction. Per 28 U.S.C. § 1367(a), "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III." Supplemental jurisdiction "may only be invoked" under this provision "when the district court has a hook of original jurisdiction." *Herman Fam. Revocable Tr. v. Teddy Bear*,

---

[7] "As a general rule in cases to which federal law applies, federal labor policy requires that individual employees wishing to assert contract grievances must attempt use of the contract grievance procedure agreed upon by employer and union as the mode of redress." *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652 (1965). Where, as here, the court converts an employee's state law claim into a § 301 claim, the exhaustion requirement applies to the converted claim. *Lueck*, 471 U.S. at 220–21; *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1036–37 (9th Cir. 2016). "[I]n the ordinary case, an employee's failure to exhaust contractually mandated procedures precludes judicial relief" and requires the dismissal of federal claims. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 986 (9th Cir. 2007) (order).

254 F.3d 802, 805 (9th Cir. 2001). In other words, "where there is no underlying original federal subject matter jurisdiction, the court has no authority to adjudicate supplemental claims under § 1367." *Id.* Therefore, if a district court dismisses the federal claims in an action "for lack of subject matter jurisdiction," it cannot exercise supplemental jurisdiction over the remaining claims. *Id.* at 806. This is because "[d]ismissal on jurisdictional grounds means that the court was without original jurisdiction and had no authority to do anything other than to determine its jurisdiction." *Id.*

If, however, the district court dismisses the federal claims in an action on non-jurisdictional grounds, the court is not required to dismiss the remaining claims. *Id.* (noting § 1367(c) provides that a district court "may" decline to exercise supplemental jurisdiction if it has dismissed all claims "over which it had original jurisdiction"). Therefore, if the district court dismisses the federal claims for non-jurisdictional reasons, "it has *discretion* under § 1367(c) to adjudicate the remaining claims." *Id.* (emphasis added); *see also Lacey v. Maricopa Cnty.*, 693 F.3d 896, 940 (9th Cir. 2012) (en banc) ("Where a district court 'dismiss[es] every claim over which it had original jurisdiction,' it retains 'pure[ ] discretion[ ]' in deciding whether to exercise supplemental jurisdiction over the remaining claims." (quoting *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009))).

Here, as stated, the district court dismissed Renteria-Hinojosa's federal untimely-wage claims for failure to exhaust CBA grievance procedures. Thus, our jurisdiction to review the remand orders depends on whether the dismissal of the federal untimely-wage claims for failure to exhaust was based on a lack of subject matter jurisdiction. Our circuit

has not yet squarely addressed the issue of whether the exhaustion requirement for § 301 claims is jurisdictional. We conclude that it is not for two reasons.

First, "[o]nly Congress may determine a lower federal court's subject-matter jurisdiction." *Kontrick v. Ryan*, 540 U.S. 443, 452 (2004). Courts therefore "treat a rule as jurisdictional only if Congress clearly states that it is." *Santos-Zacaria v. Garland*, 598 U.S. 411, 416 (2023) (internal quotation marks and citations omitted). "[R]ules derived from sources other than Congress are more accurately characterized as 'mandatory claim-processing rules'" rather than "true jurisdictional rules." *Rodriguez v. Cnty. of Los Angeles*, 891 F.3d 776, 790 (9th Cir. 2018) (quoting *Hamer v. Neighborhood Hous. Servs. of Chicago*, 583 U.S. 17, 20 (2017)). We have therefore held that "failure to exhaust an administrative or other pre-filing remedy deprives federal courts of subject matter jurisdiction only in those cases in which Congress makes plain the jurisdictional character of the exhaustion requirement in question." *Maronyan v. Toyota Motor Sales*, 658 F.3d 1038, 1040 (9th Cir. 2011). Congress has not imposed a jurisdictional exhaustion requirement for § 301 claims. Section 301 does not itself include an exhaustion requirement. *See* 29 U.S.C. § 185(a). Rather, the "general rule" that an employee must exhaust contract grievance procedures before filing suit comes from judicial decisions and reflects "policy" considerations such as the "[u]nion interest in prosecuting employee[] grievances" as well as Congress' "approv[al] [of] contract grievance procedures" as the preferred method of dispute resolution. *Republic Steel Corp.*, 379 U.S. at 652–53. The judicial source for the exhaustion requirement for § 301 claims and absence of any clear statement from

Congress indicates that it is a mandatory claim-processing rule, not a jurisdictional requirement.

Second, the existence of equitable, judge-made exceptions to the exhaustion requirement confirms that the requirement is not jurisdictional. Courts "cannot grant equitable exceptions to jurisdictional rules" because they "are not able to exceed limits on their adjudicative authority." *Santos-Zacaria*, 598 U.S. at 416. In the case of § 301 exhaustion, however, the Supreme Court has created equitable exceptions to avoid "an unacceptable injustice when the union representing the employee in the grievance/arbitration procedure acts in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation" and prevents the employee from properly exhausting. *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164 (1983); *see also Vaca v. Sipes*, 386 U.S. 171, 185 (1967); *Soremekun*, 509 F.3d at 986–87. By creating these exceptions, the Court has implied that the exhaustion requirement for § 301 claims is not jurisdictional. [8] We therefore conclude that the district court's dismissal of Renteria-Hinojosa's federal untimely-

---

[8] Our conclusion is consistent with the Fourth Circuit's decision in *Staudner v. Robinson Aviation, Inc.*, which held that "the exhaustion requirement under § 301(a) is a nonjurisdictional precondition to suit rather than a jurisdictional limit." 910 F.3d 141, 148 (4th Cir. 2018). We note, as the Fourth Circuit did in *Staudner*, that the Fifth Circuit has reached the opposition conclusion, holding that the exhaustion requirement is jurisdictional. *See Nat'l Football League Players Ass'n v. Nat'l Football League*, 874 F.3d 222, 226–28 (5th Cir. 2017) (per curium). However, for the reasons above, we are persuaded that the requirement is not jurisdictional, and we join the Fourth Circuit in so holding.

wage claims for failure to exhaust was not based on a lack of subject matter jurisdiction.

Because the district court's dismissal of the federal claims could not have been jurisdictional, the court had discretion either to exercise supplemental jurisdiction over the remaining claims *or* to decline and remand them. *Herman*, 254 F.3d at 805. Where, as here, the district court exercises its discretion to decline supplemental jurisdiction over state law claims, its remand order is not "based on a 'lack of subject matter jurisdiction' for purposes of §§ 1447(c) and (d)." *Carlsbad*, 556 U.S. at 638–39; *see also Thermtron*, 423 U.S. at 345–46; *Kircher*, 547 U.S. at 640. Therefore, § 1447(d) does not bar our review of the remand orders. Further, as Renteria-Hinojosa's counsel conceded at oral argument, because § 1447(d) does not bar our review, we have jurisdiction to review the remand orders in their entirety, including the district court's conclusions that Renteria-Hinojosa's remaining state law claims are not federal § 301 claims. *See Carlsbad*, 556 U.S. at 641; *see also BP P.L.C. v. Mayor & City Council of Baltimore*, 593 U.S. 230, 237 (2021) (concluding that where review is authorized under § 1447(d), courts of appeals may "examine the whole of a district court's 'order,' not just some of its parts or pieces").

### III.  PREEMPTION

We now turn to the merits of Sunsweet's appeal. Sunsweet principally argues that the district court erred in concluding that Renteria-Hinojosa's remaining state law claims are not preempted by § 301. Preemption is a question of law that we review de novo. *Burnside*, 491 F.3d at 1058; *see also HIF Bio, Inc. v. Yung Shin Pharms. Indus. Co.*, 600 F.3d 1347, 1352 (Fed. Cir. 2010), *as amended on reh'g in*

*part* (June 14, 2010) (explaining that although the court reviews "for abuse of discretion the district court's decision not to exercise supplemental jurisdiction," it reviews "question[s] of law" in a remand order "without deference").

### A. Section 301

As discussed, § 301 preempts "any state cause of action for violation of contracts between an employer and a labor organization." *Franchise Tax Bd.*, 463 U.S. at 23 (quotation marks omitted). This circuit has "distilled" the Supreme Court's doctrine on § 301 preemption "into a two-part inquiry into the nature of a plaintiff's claim": § 301 preempts a plaintiff's state law claim only where the claim (1) "arises entirely from" a collective bargaining agreement or (2) "requires interpretation of" the agreement. *Alaska Airlines Inc. v. Schurke*, 898 F.3d 904, 920–21 (9th Cir. 2018) (en banc).

At step one of this test, "we evaluate the 'legal character' of the claim by asking whether it seeks purely to vindicate a right or duty created by the CBA itself." *Id*. (quoting *Livadas v. Bradshaw*, 512 U.S. 107, 123 (1994)). If the claim "arises entirely from a right or duty of the CBA . . . it is, in effect, a CBA dispute in state law garb, and is preempted." *Id*. at 921. The collective bargaining agreement must be the "'only source' of the right the plaintiff seeks to vindicate." *Id*. (quoting *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 258 (1994)). Thus, a claim that "involves a right conferred upon an employee by virtue of state law" is not preempted at step one. *Burnside*, 491 F.3d at 1059.

If the right at issue does not arise entirely from a collective bargaining agreement, we proceed to step two and ask "whether litigating the state law claim nonetheless requires interpretation of a CBA, such that resolving the

entire claim in court threatens the proper role of grievance and arbitration." *Alaska Airlines*, 898 F.3d at 921. Claims are only preempted at step two "to the extent there is an active dispute over 'the meaning of contract terms.'" *Id.* (quoting *Livadas*, 512 U.S. at 124). Therefore, "[a] hypothetical connection between the claim and the terms of the CBA is not enough to preempt the claim . . . [n]or is it enough that resolving the state law claim requires a court to refer to the CBA and apply its plain or undisputed language." *Id*. at 921–22 (cleaned up).

If a claim "is either grounded in the provisions of the labor contract or requires interpretation of it," that claim arises under federal law, even if the plaintiff does not "allege[] a breach of contract in their complaint." *Burnside*, 491 F.3d at 1059. This "complete pre-emption" rule prevents plaintiffs from "evad[ing] the requirements of section 301 by relabeling their contract claims as . . . state cause[s] of action." *Id.* (quotation marks and citation omitted); *Caterpillar*, 482 U.S. at 393–94. However, "the plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court." *Caterpillar*, 482 U.S. at 399. Therefore, when a plaintiff's state law claim does *not* arise from a collective bargaining agreement or require interpretation of that agreement, a defendant cannot, by invoking the agreement as a defense, "transform the action into one arising under federal law." *Id.*

## B. Renteria-Hinojosa's Claims

### *1. Step One*

The district court correctly determined that Renteria-Hinojosa's remaining claims are not preempted at step one of the preemption test. Each of Renteria-Hinojosa's state law claims alleges violations of rights that exist under California

law. Specifically, she asserts violations of California statutes and regulations prohibiting unfair business practices, Cal. Bus. & Prof. Code §§ 17200–03, and retaliation, Cal. Lab. Code § 1102.5; and requiring employers to provide minimum wages, *id.* §§ 1194, 1197, 1197.1; overtime pay, *id.* § 510; paid sick days, *id.* § 246; accurate itemized wage statements, *id.* § 226; reimbursement for necessary expenditures, *id.* § 2802; meal and rest periods, *id.* §§ 226.7, 512; and adequate seating, Cal. Code Regs. tit. 8, § 11070(14). As such, Renteria-Hinojosa's claims do not arise exclusively from the CBAs, but rather from "right[s] conferred" by state law. *Burnside*, 491 F.3d at 1059.

Sunsweet argues her claims are nevertheless preempted at step one because Renteria-Hinojosa's "allegations necessarily allege a breach of the CBA." This argument misconstrues the preemption test. At step one, a state law claim is preempted only if a CBA is the "only source" of the right underlying the claim, as opposed to an additional source. *Alaska Airlines*, 898 F.3d at 921 (citation omitted). Because state law is a source for each of Renteria-Hinojosa's claims, it does not matter whether Renteria-Hinojosa's factual allegations could also support claims for breach of the CBAs at step one. *Id.*; *see also Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 409–10 (1988).

### 2. Step Two

On appeal, Sunsweet argues that Renteria-Hinojosa's claims for overtime pay, sick leave pay, and meal and rest breaks are preempted at step two because they require interpretation of "substantive provisions" of the CBAs. We disagree.

<u>Overtime Pay</u>. Renteria-Hinojosa alleges that Sunsweet required employees to "work off the clock" and seeks unpaid

overtime compensation under California Labor Code §§ 510 and 1194. To determine the amount of liability for unpaid overtime wages under state law, a court may need to refer to the pay rates listed in the CBAs to identify the applicable regular rate of pay. *See* Cal. Lab. Code §§ 510, 1194. But merely referring to CBA terms does not trigger § 301 preemption. *Livadas*, 512 U.S. at 125 ("[T]he mere need to 'look to' the collective-bargaining agreement for damages computation is no reason to hold the state-law claim defeated by § 301."); *Alaska Airlines*, 898 F.3d at 921. Sunsweet fails to identify any interpretive dispute about a CBA term that must be resolved to determine the regular rate of pay or any other element of Renteria-Hinojosa's overtime pay claims. Sunsweet only vaguely argues that calculating liability would involve questions regarding the CBA overtime provisions that are "meatier" than the district court recognized. This conclusory argument fails to establish that the overtime pay claims are preempted.

*Sick Leave Pay Rate*. Renteria-Hinojosa alleges that Sunsweet failed to pay employees at the sick pay rate required by California Labor Code § 246. Sunsweet argues that these claims are preempted because the CBAs "define pay during leave" in terms that require interpretation. Specifically, Sunsweet cites CBA provisions providing for accrual of sick leave pay based on "enhanced hours"; provisions requiring "reasonable proof of illness"; and provisions making the company "the sole judge" of whether proof of illness is sufficient. Even assuming the meaning of these provisions is genuinely disputed, any such dispute is irrelevant because these provisions affect only when an employee accrues sick leave pay and when an employee is entitled to use sick leave pay. Those issues are not implicated

by Renteria-Hinojosa's claim that Sunsweet failed to pay employees at the sick pay *rate* required under California law.

*Meal and Rest Breaks*. Renteria-Hinojosa alleges that Sunsweet failed to provide meal and rest breaks as required under California Labor Code §§ 226.7 and 512. Sunsweet argues that litigating these claims will require interpretation of CBA rest break provisions because these provisions "apply not only to the timing of breaks but also permit Sunsweet to modify breaks under certain circumstances." But the terms of the CBA rest break provisions are irrelevant to Renteria-Hinojosa's claims that Sunsweet failed to provide rest breaks as required by California law. California's rest break requirements are a "minimum labor standard" that neither an employee nor their collective bargaining representative can waive. *Zavala v. Scott Bros. Dairy, Inc.*, 49 Cal. Rptr. 3d 503, 506, 509 (Ct. App. 2006) (citation omitted) (discussing Cal. Lab. Code § 226.7 (2006)); *Valles v. Ivy Hill Corp.*, 410 F.3d 1071, 1076, 1082 (9th Cir. 2005) ("[Section] 301 does not permit parties to waive, in a collective bargaining agreement, nonnegotiable state rights conferred on individual employees." (quotation marks and citation omitted)). Sunsweet was therefore required to provide rest breaks in accordance with state law, regardless of whether the CBA gave Sunsweet certain discretion to modify rest breaks.

### 3. CBA Dispute Resolution Provisions

Sunsweet also argues that all of Renteria-Hinojosa's claims are preempted because of the dispute resolution provisions in the CBAs. Each CBA includes a mandatory dispute resolution procedure for employee "grievances." The 2017–21 CBA defines "grievance" as a complaint of an alleged violation of the CBA. The 2021–23 CBA defines

"grievance" more broadly to also include "a claim by an employee . . . that they have been adversely affected by a violation, misapplication or misinterpretation of . . . the California Labor Code." The agreement states that "[a]ll such claims are exclusively subject to this Dispute Resolution procedure, which shall be the sole and exclusive remedy for such claims." [9] Broadly speaking, both dispute resolution provisions require employees to pursue a multi-step complaint process with management, after which the Union may appeal management's decision to an arbitrator.

Sunsweet argues that the 2021–2023 CBA effectively waived Renteria-Hinojosa's right to bring her state law claims in court. In other words, Sunsweet argues that Renteria-Hinojosa brought her claims in the wrong forum and that under the CBA, her only option was to pursue her claims through grievance arbitration. Sunsweet further contends that, because all of Renteria-Hinojosa's claims must be arbitrated under the CBA, her claims all "arise under" the CBA and are preempted at step one of the preemption test. Alternatively, Sunsweet argues that even if it is unclear whether the CBA dispute resolution provisions cover all of Renteria-Hinojosa's claims, a court would need to resolve that ambiguity to determine whether Renteria-

---

[9] The parties dispute the applicability of the two CBAs. Sunsweet contends that the 2021–23 CBA is the "operative" agreement for the purposes of this litigation because the 2021–23 CBA was "in place at the time of Plaintiff's grievance." ("Grievance" here presumably refers to Renteria-Hinojosa's lawsuits.) Renteria-Hinojosa argues that the 2017–21 CBA governs her claims based on alleged misconduct that occurred prior to March 2021. Because, for the reasons below, we conclude that neither dispute resolution provision can trigger preemption of Renteria-Hinojosa's claims, we need not reach the merits of this dispute.

Hinojosa is required to arbitrate her claims, and therefore, her claims are preempted at step two.

Sunsweet's arguments are foreclosed by the Supreme Court's decision in *Caterpillar Inc. v. Williams*, which held that a defendant cannot create removal jurisdiction under § 301 by invoking a collective bargaining agreement as a defense. 482 U.S. at 398–99. *Caterpillar* considered the intersection of two federal court doctrines: the well-pleaded complaint rule and the complete preemption doctrine. *Id.* at 393–94, 398–99. As the Court explained, "[o]nly state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant," and, "[a]bsent diversity of citizenship, federal-question jurisdiction is required" for removal. *Id.* at 392 & nn.5–6 (citing 28 U.S.C. §§ 1331, 1441). In general, "[t]he presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Id.* at 392.

*Caterpillar* also recognized "an 'independent corollary' to the well-pleaded complaint rule, known as the 'complete pre-emption' doctrine." *Id.* at 393 (citation omitted). As our court has explained, "despite its name," complete preemption "is actually a doctrine of jurisdiction." *Alaska Airlines*, 898 F.3d at 923 n.15 (quoting *Balcorta v. Twentieth Century-Fox Film Corp.*, 208 F.3d 1102, 1107 n.7 (9th Cir. 2000)). Under this doctrine, "[o]nce an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Caterpillar*, 482 U.S. at 393; *see also Schmeling v. NORDAM*, 97 F.3d 1336, 1342 (10th Cir. 1996) (clarifying

that "complete preemption" "refers to the replacement of a state cause of action with a federal one" rather than "a crude measure of the breadth of the preemption (in the ordinary sense) of a state law by a federal law"). "[T]he 'complete preemption' doctrine does not abrogate the standard rule that a defense of preemption does not create federal question jurisdiction" because it is not the "defense of preemption" that creates federal jurisdiction, but rather the inherently federal nature of the plaintiffs' claim. *Balcorta*, 208 F.3d at 1107 n.7 (citing *Caterpillar*, 482 U.S. at 393).

The applicability of complete preemption, then, turns on the "nature of the plaintiff's claim." *Cramer v. Consol. Freightways Inc.*, 255 F.3d 683, 691 (9th Cir. 2001) (en banc), *as amended* (Aug. 27, 2001). As the Court held in *Caterpillar*, "when '[t]he heart of the [state law] complaint [is] a . . . clause in the collective bargaining agreement,' that complaint arises under federal law." 482 U.S. at 394 (quoting *Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557, 558 (1968)). "[R]emoval is at the defendant's option" because "the plaintiff has *chosen* to plead what we have held must be regarded as a federal claim." *Id.* at 399; *see also Burnside*, 491 F.3d at 1059 (explaining that *Caterpillar*'s complete preemption rule applies where "the plaintiffs' claim is either grounded in the provisions of the labor contract or requires interpretation of it," even if "the plaintiffs have not alleged a breach of contract in their complaint").

However, where a plaintiff "asserts what is plainly a state-law claim," "the presence of a federal question, even a § 301 question, in a defensive argument does not overcome the paramount policies embodied in the well-pleaded complaint rule," and "a *defendant* cannot, merely by injecting a federal question into an action" through a

defensive argument, "transform the action into one arising under federal law." *Caterpillar*, 482 U.S. at 398–99. Thus, if a plaintiff's claim "is plainly based on state law, § 301 preemption is not mandated simply because the defendant refers to the CBA in mounting a defense." *Cramer*, 255 F.3d at 691. Again, under *Caterpillar*, because "[t]he plaintiff's claim is the touchstone" for complete preemption, "the need to interpret the CBA must inhere in the nature of the plaintiff's claim." *Id*.

Sunsweet's argument for federal removal jurisdiction is foreclosed by *Caterpillar* because, as discussed, Renteria-Hinojosa's claims do not arise from the CBAs or require interpretation of the CBAs. Rather, Sunsweet invokes the CBA dispute resolution provisions in its defensive arguments. Although Sunsweet does not label its arguments as "defenses," that is what they are. Sunsweet argues that the 2021–2023 CBA waived Renteria-Hinojosa's right to litigate her claims in court and, therefore, Renteria-Hinojosa is in the wrong forum—she must pursue her claims in grievance arbitration. The argument that a plaintiff has contractually waived her right to a judicial forum is a defense. *See Loc. Joint Exec. Bd. of Las Vegas v. N.L.R.B.*, 540 F.3d 1072, 1079 (9th Cir. 2008) ("Proof of a contractual waiver is an affirmative defense . . . ."); *Caterpillar*, 482 U.S. at 398 (referring to the defendant's contractual waiver argument as a "defense"). So too is the corresponding argument that a plaintiff must pursue her claims through contractual dispute resolution processes like arbitration. *See, e.g.*, *Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1462 (9th Cir. 1983) ("[R]eliance upon an arbitration agreement to avoid immediate litigation is an equitable defense."); *Vaca*, 386 U.S. at 185 (referring to employers' reliance on "unexhausted grievance and

arbitration procedures as a defense to the employee's cause of action").

Even assuming Sunsweet is correct that the 2021–2023 CBA waived Renteria-Hinojosa's right to a judicial forum, and that she must therefore pursue her claims through grievance arbitration, Renteria-Hinojosa's claims do not "arise under" the CBA. Rather, her claims arise under state law. Sunsweet could have answered her state law claims by arguing, as an affirmative defense, that the CBA dispute resolution provisions preclude litigation in state court and by moving to compel arbitration. Under *Caterpillar*, however, this defensive argument does not create § 301 jurisdiction.

As the Court recognized in *Caterpillar*, "when a defense to a state claim is based on the terms of a collective-bargaining agreement, the state court will have to interpret that agreement to decide whether the state claim survives." 482 U.S. at 398. But the fact that a state court may need to interpret the CBA to determine whether Renteria-Hinojosa can maintain her claims in state court does not change the state law nature of her claims and does not create § 301 jurisdiction under *Caterpillar*. *Id.* at 398–99. A state court may therefore "look to the CBA to determine whether it contains a clear and unmistakable waiver of state law rights without triggering § 301 preemption." *Cramer*, 255 F.3d at 692; *see also Alaska Airlines*, 898 F.3d at 921–22 (listing waiver of state law rights among other analyses that a state court might be required to perform without triggering preemption).[10]

---

[10] In arguing that Renteria-Hinojosa's claims are preempted because the CBA waived her right to litigate her claims in state court, Sunsweet relies on two Supreme Court decisions that applied a "clear and unmistakable waiver" standard to determine whether a collective bargaining

Sunsweet offers multiple theories as to why *Caterpillar* does not foreclose its preemption argument, none of which is persuasive. Sunsweet first argues that the Court's holding in *Caterpillar* was limited to "[c]laims bearing no relationship to a collective-bargaining agreement." This argument misconstrues the Court's decision. As explained, *Caterpillar* held that where a state law claim is not otherwise preempted by § 301, a defendant cannot create § 301 jurisdiction by invoking the agreement as a defense. 482 U.S. at 398–99. Elsewhere in the opinion, the Court offered, as an example of state law claims that are not preempted by § 301, "[c]laims bearing no relationship to a collective-bargaining agreement beyond the fact that they are asserted by an individual covered by such an agreement." *Id.* at 396 n.10. Nothing in *Caterpillar* suggests that these are the *only* claims not preempted by § 301, or that the Court's discussion of the well-pleaded complaint rule was limited to such claims. And, as discussed above, Sunsweet has not established that Renteria-Hinojosa's claims are otherwise preempted by § 301. Accordingly, *Caterpillar* applies here.

Sunsweet next relies on language from *Lyons v. Alaska Teamsters Employer Service Corp*., 188 F.3d 1170 (9th Cir.

---

agreement waived employees' right to litigate a claim in federal court, *Wright v. Universal Maritime Services Corp.*, 525 U.S. 70 (1998), and *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247 (2009). Neither case concerned removal jurisdiction or preemption. Rather, in both *Wright* and *Pyett*, the plaintiffs brought federal claims in federal court. 525 U.S. at 75; 556 U.S. at 253–54. The employers raised arbitration provisions in the collective bargaining agreements as an affirmative defense to the plaintiffs' claims, *Wright*, 525 U.S. at 75, and in moving to compel arbitration, *Pyett*, 556 U.S. at 251–52, 254. Because neither case involved removal jurisdiction or preemption, neither case affects our conclusion that, under the well-pleaded complaint rule in *Caterpillar*, Sunsweet's waiver defense does not create § 301 jurisdiction.

1999), to argue that, contrary to *Caterpillar*, a defendant may remove a state law claim based on the defendant's invocation of a collective bargaining agreement in a defensive argument. *Lyons*, however, does not support this proposition. In that case, we considered complete preemption in the context of the Employee Retirement Income Security Act ("ERISA"). *See id*. at 1171–72. "[S]tate law claims are preempted by ERISA only if they fall within the scope of ERISA's civil enforcement provision." *Geweke Ford v. St. Joseph's Omni Preferred Care Inc.*, 130 F.3d 1355, 1358 (9th Cir. 1997); *see also Hansen v. Grp. Health Coop.*, 902 F.3d 1051, 1058–59 (9th Cir. 2018). Claims within the scope of this provision are completely preempted. *Geweke Ford.*, 130 F.3d at 1358; *Hansen*, 902 F.3d at 1058–59. *Lyons* explained that where the ERISA "preemption defense" is available—*i.e*., where nominally state law claims fall within the scope of ERISA's civil enforcement provision—a federal court "has jurisdiction under the theory of complete preemption," even where federal claims "do[] not appear on the face of plaintiff's well-pleaded complaint." 188 F.3d at 1172. This characterization of the complete preemption doctrine is entirely consistent with *Caterpillar* and does not support Sunsweet's position that—contrary to *Caterpillar*'s direct holding—a defendant's reliance on a collective bargaining agreement in a defensive argument creates § 301 jurisdiction.

Finally, Sunsweet cites *Carter v. Health Net of California, Inc*., 374 F.3d 830 (9th Cir. 2004), to support its argument for § 301 jurisdiction, but that case is also inapposite. *Carter* considered federal jurisdiction over opposing petitions to vacate and confirm an arbitration award against an insurance company under the California Arbitration Act. *Id.* at 832–33. In holding that the district

court lacked jurisdiction over the dispute, we distinguished cases holding that federal courts have § 301 jurisdiction over certain arbitration-related actions. *Id.* at 834–35. *Carter* explained that "[u]nlike the [Federal Arbitration Act] or state arbitration statutes, the LMRA can be used as a basis for federal question jurisdiction over actions to compel arbitration, as well as petitions to confirm or vacate arbitration awards." *Id.* at 835 (citing *Johnson v. England*, 356 F.2d 44, 45 (9th Cir. 1966) (action to compel arbitration over "controversies . . . arising out of the terms of the [] collective bargaining agreement"); *United Bhd. of Carpenters & Joiners of Am., Loc. No. 1780 v. Desert Palace, Inc.*, 94 F.3d 1308, 1309 (9th Cir. 1996) (same), *abrogated on other grounds by*, *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287 (2010); *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 31–34 (1987) (action to vacate an arbitration award for dispute submitted to arbitration pursuant to a collective bargaining agreement); *Mulvaney Mech., Inc. v. Sheet Metal Workers Int'l Ass'n, Loc. 38*, 351 F.3d 43, 44 (2d Cir. 2003) (per curium) (same); *Brown v. Witco Corp.*, 340 F.3d 209, 211–13 (5th Cir. 2003) (action to enforce arbitration award for dispute submitted to arbitration pursuant to a collective bargaining agreement)).

*Carter* and the cases cited therein are irrelevant here because in actions to compel arbitration or to vacate or enforce an arbitration award, the arbitration provision in a collective bargaining agreement does not arise as a defense—it is the basis for the complaint. *Carter* does not address § 301 jurisdiction over a state law action where, as here, the defendant raises the collective bargaining agreement in a defensive argument that the plaintiff should

have pursued her state law claims in arbitration.[11] In this context, as explained above, § 301 jurisdiction is controlled by *Caterpillar*.

### 4. Private Attorneys General Act

Sunsweet raises one additional preemption argument regarding Renteria-Hinojosa's PAGA action. As noted above, PAGA provides a private cause of action for employees to sue their employers for violations of the California Labor Code. Cal. Lab. Code §§ 2698 *et seq*. Sunsweet argues that because the claims in Renteria-Hinojosa's PAGA action all technically arise from the same private suit provision, and because the district court concluded that Renteria-Hinojosa's claim for untimely wages is preempted, the rest of her claims are necessarily preempted, too. In support of this argument, Sunsweet cites *Garcia v. Service Employees International Union*, 993 F.3d 757 (9th Cir. 2021), for the proposition that "once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim." *Id*. at 762 (quoting *Caterpillar*, 482 U.S. at 392).

This proposition, however, does not help Sunsweet because the district court did not conclude that PAGA itself is "completely preempted" by federal law; rather, it concluded that one of the claims alleging a predicate violation of the California Labor Code is preempted. Sunsweet does not identify any other authority that supports its argument that the district court's preemption

---

[11] For the same reason, Sunsweet's reliance on *Textile Workers Union of America v. Lincoln Mills of Alabama*, 353 U.S. 448 (1957), is inapposite. *Lincoln Mills* similarly concerned federal jurisdiction over an action to compel arbitration initiated by a union in federal court. *Id.* at 449.

determination as to one PAGA claim necessarily applies to the remaining PAGA claims simply because they share the same statutory cause of action. Indeed, this theory is undercut by the Supreme Court's recent holding that "a PAGA action asserting multiple code violations affecting a range of different employees does not constitute 'a single claim' in even the broadest possible sense." *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 654 (2022) (citation omitted), *reh'g denied*, 143 S.Ct. 60 (2022). We therefore conclude that Renteria-Hinojosa's remaining PAGA claims are not preempted.

## IV. REMAND OF NON-PREEMPTED CLAIMS

We now turn to the district court's decision to remand Renteria-Hinojosa's remaining state law claims to state court, instead of exercising supplemental jurisdiction over these claims. We review this decision for abuse of discretion. *See Carlsbad*, 556 U.S. at 640.

Sunsweet first argues that the court abused its discretion because it did not "appreciate that it had the option of retaining jurisdiction" over the remanded claims after it dismissed the federal claims. Sunsweet is correct that, after a district court dismisses federal claims in an action on non-jurisdictional grounds, it is required to exercise its discretion to decide whether it is "appropriate to keep the state claims in federal court"; it cannot remand for lack of supplemental jurisdiction. *Lacey*, 693 F.3d at 940. But based on our review of the district court's orders, we conclude that the district court did not make this mistake. In both orders, the district court reasoned that "[b]ecause the only claim over which the Court would have jurisdiction must be dismissed, the Court *should not* retain jurisdiction over [the remaining claims] [and] . . . [t]he Court *will* therefore remand the case back to

the state court." The district court's use of the phrases "should not" (versus "cannot") and "will remand" (versus "must remand") indicate that the district court recognized that it could retain supplemental jurisdiction but declined to do so. *Compare id.* at 939–40 (determining that the district court failed to appropriately exercise its discretion when it concluded that "once it dismissed all of the federal claims, it no longer had supplemental jurisdiction over the remaining state law claims").

Sunsweet next argues that the district court's remand was improper because Renteria-Hinojosa did not raise supplemental jurisdiction below and therefore "waived" the issue. Essentially, Sunsweet contends that the district court erred in declining to exercise supplemental jurisdiction because Renteria-Hinojosa did not oppose supplemental jurisdiction below. Even assuming Renteria-Hinojosa forfeited the issue, the district court did not err.[12] Although a district court "is not required to make a § 1367(c) analysis unless asked to do so by a party," a district court may "invoke[]" its "discretion under § 1367(c) . . . on its own initiative." *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1000, 1001 n.3 (9th Cir. 1997) (en banc). In attempting to construe *Acri* in its favor, Sunsweet cites *Acri*'s discussion of a D.C. Circuit decision that held that a party's arguments regarding the exercise of discretionary supplemental jurisdiction can be waived on appeal if not raised below. *Id.* at 1001 (characterizing *Doe by Fein v. District of Columbia*, 93 F.3d 861 (D.C. Cir. 1996)). This holding, however, has no bearing on the district court's authority to consider "on its own

---

[12] Renteria-Hinojosa asserts that she "clearly and explicitly raised the issue in briefing" below, but she does not provide a citation to the record.

initiative" whether supplemental jurisdiction is appropriate. 114 F.3d at 1001 n.3.

## V. CONCLUSION

For the foregoing reasons, we have jurisdiction to review the district court's remand orders; we agree with the district court that Renteria-Hinojosa's remaining state law claims are not preempted by § 301; and we conclude that the district court did not abuse its discretion in remanding these claims to state court.

**AFFIRMED.**